UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 486 |
| v. | Judge Edmond E. Chang |
| ROBERT ANTHONY HAAS | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR PRETRIAL RELEASE**

The United States of America, by its attorney JOHN R. LAUSCH, JR., hereby responds to defendant ROBERT ANTHONY HAAS's motion for pretrial release. Dkt. No. 100. As this Court previously found, defendant is a danger to the community and should remain in detention pending trial.

**BACKGROUND**

Defendant is charged with five counts of threatening to assault or murder a federal law enforcement officer in violation of Title 18, United States Code, Section 115(a)(1)(B). Dkt. No. 38. On or about May 8 and 9, 2019, defendant sent multiple threatening text messages to an FBI Task Force Officer ("Federal Official C"). Defendant told Federal Official C, among other things, that Federal Official C "should come meet true evil," and "you know I get what I want and you deserve death." Dkt. No. 38, Counts I-III. On or about May 11, 2019, defendant left a voice mail message on Federal Official C's work cellular telephone stating, in effect:

> Why is your phone off you baby dick-sucking kike. What if an American is in danger and needs your help. Fucking loser Jew-lover piece of shit. You are guilty of fucking treason and you need a bullet in your fucking head for it. Telling me you support Israel.

> Mother fucker. You support Americans bitch you better watch your fucking mouth boy.

Dkt. No. 38, Count IV.

On June 10, 2019, defendant was charged by complaint with threatening to assault or murder a federal law enforcement officer in violation of Title 18, United States Code, Section 115(a)(1)(B) by leaving the threatening voice mail message on Federal Official C's work cellular phone. This Court also issued a warrant for defendant's arrest. Dkt. No. 1, ¶ 13; Dkt. No. 4. As is described in the complaint, defendant communicated the threat to Federal Official C after previously threatening two other federal officials, and after federal law enforcement had asked that defendant moderate the tone of his communications. Dkt. No. 1, ¶¶ 1-8.

On June 11, 2019, defendant was arrested and was transported from Ottawa to Chicago in an Illinois State Police ("ISP") vehicle. The ISP vehicle was equipped with an audio and video recording device. During the drive from Ottawa to Chicago, defendant continued to threaten Federal Official C, stating, in effect, that Federal Official C "needs a fucking 12-gauge to his fucking throat and pull the trigger and pop his head off his fucking shoulders. And it's gonna happen." Dkt. No. 38, Count V.

On June 14, 2019, a detention hearing was held before Magistrate Judge Kim. Dkt. No. 12. Magistrate Judge Kim denied the government's motion for pretrial detention. Dkt. Nos. 12; 14. Magistrate Judge Kim stayed his order until June 17, 2019, at 5:00 p.m. pending any further proceedings before the Emergency U.S. District Court Judge. Dkt. No. 12.

On June 17, 2019, the government filed an emergency motion for revocation of Magistrate Judge Kim's release order. Dkt. No. 18. That same day, after a hearing, Judge Tharp granted the government's motion and ordered that defendant shall be detained in custody pending trial. Dkt. No. 21. Judge Tharp's detention order stated, among other things, "the circumstances of offense also reflect that defendant's character includes hatefulness, extreme anger, intolerance, and emotional volatility." Dkt. No. 22.

On June 19, 2019, the grand jury returned a one-count indictment charging defendant with threatening to assault or murder a federal law enforcement officer in violation of Title 18, United States Code, Section 115(a)(1)(B). Dkt. No. 25. On September 11, 2019, defendant was charged by a superseding indictment with five counts of threatening to assault or murder a federal law enforcement officer in violation of Title 18, United States Code, Section 115(a)(1)(B). Dkt. No. 38.

On January 6, 2020, defendant filed a motion for release from custody. Dkt. No. 68. On January 13, 2020, this Court held a hearing on defendant's motion. Dkt. No. 72. At the hearing, the parties presented arguments regarding whether this Court should grant defendant pretrial release. *See* 18 U.S.C. § 3142. The government presented audio recordings of defendant's voicemails to Federal Official C[1] and identified additional statements made by defendant online that discussed violence. *See also* Dkt. No. 51 (search warrant application to search devices for information related to social media website Vk.com). Defendant argued that his statements were

---

[1] Defendant left multiple voicemails for Federal Official C in addition to the message charged in Count IV.

not threats, and he identified a third party custodian who was amenable to having defendant reside with her and her husband in her home pending trial. After hearing argument from both sides, this Court denied defendant's motion for pretrial release, finding that defendant is a danger to the community. Dkt. No. 72.

On March 19, 2020, defendant once again moved for pretrial release. Dkt. No. 100. Defendant argues that a draft plea agreement circulated by the government, which defendant has rejected, should require defendant's immediate release from detention without conditions. Dkt. No. 100. As this Court previously found, defendant is a danger to the community and should be detained.

## ARGUMENT

Defendant has not identified any change of circumstances that should require that this Court reconsider its January 13, 2020 ruling on pretrial detention. Defendant does not dispute that he made the charged statements or the online postings that the government referenced at his detention hearing or in other court filings.[2]

Instead, defendant seeks release because the government sent defendant a draft plea agreement that, if accepted, would have included the government's recommendation that defendant receive a sentence of time served as of the date of

---

[2] Furthermore, defendant has not represented to this Court that defendant would comply with proposed conditions identified by Pretrial Services in advance of the January 13, 2020 hearing. If this Court were to consider pretrial release, the government would request that this Court impose conditions of release.

defendant's guilty plea.[3]   As the government discussed with defendant's standby

counsel, if defendant had pleaded guilty pursuant to the draft plea agreement, the

government would have also recommended at sentencing that this Court impose a

term of three years of supervised release.  The draft plea agreement further provided

that the government would recommend that defendant participate in psychological

counseling, as may be directed by the Probation Office, as a condition of any sentence

of supervised release imposed.[4]

The government's act of sending defendant a draft plea agreement does not

eviscerate the risk that defendant poses to the community currently.  Defendant has

not accepted responsibility for his offense, as required by the draft plea agreement.

There is a stark difference between a guilty plea and acceptance of responsibility

accompanied by the prospect of court supervision, and defendant's position that his

statements about hurting people were not threats.  The law recognizes the mitigating

roles that a guilty plea and acceptance of responsibility play in sentencing by

---

[3]      Federal Rule of Criminal Procedure 11(c)(1) states that a court must not participate
in plea discussions.  Here, defendant disclosed plea discussions to this Court, and the
government responded to defendant's motion for purposes of completeness.  *See* Fed. R. Evid.
410(b)(1).  The government does not seek this Court's participation in plea discussions
between the parties.

[4]      The government discussed certain parameters of a proposed plea agreement with
defendant's standby counsel before preparing a draft plea agreement.  Standby counsel told
the government that defendant was not amenable to serving a term of court supervision.
Accordingly, the parties reached an impasse.  Thereafter, due to defendant's *pro se* status,
the government mailed defendant a draft plea agreement.  Although the government's
standard plea agreement does not discuss the government's recommendation on supervision
(which traditionally is addressed separately in the government's sentencing memorandum),
the government had communicated to standby counsel that the government would
recommend that this Court impose supervision.  The draft plea agreement states that this
Court would have discretion to impose up to three years of supervision.

incorporating deductions in the offense level for timely acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). "The adjustment's purpose is not only to induce guilty pleas; it also takes into account the reduced rate of recidivism among defendants who admit the wrongfulness of their actions." *United States v. Travis*, 294 F.3d 837, 840 (7th Cir. 2002); *see also U.S. v. Lopinski*, 240 F.3d 574, 575 (7th Cir. 2001) (the acceptance of responsibility discount is intended to, among other things, "reflect the reduced risk of recidivism of a defendant who by facing up to the wrongfulness of his conduct takes the first step to better behavior in the future"). In addition, when a guilty plea is followed by a term of court supervision, the Probation Office is in touch with defendant to discuss issues or challenges that arise, and committing additional criminal acts brings swift consequences. *United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015) ("The purposes of supervised release have been variously described as rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism"). Releasing defendant in the absence of those substantial mitigating and deterrence factors would not be appropriate in this case.

In addition, defendant repeatedly has made threats against individuals involved in the judicial process without making assurances that this behavior will not continue. On February 13, 2019, defendant posted a message on the social media website Vk.com stating, in effect:

> lf I am prosecuted for telling the truth I'm killing EVERYONE involved. Down to the bitch Jews crying pressing charges. Jews will pay for their crimes against humanity in my lifetime. Bet your ass bitches – I'm coming to get ya!" Dkt. No. 51, ¶ 16.

6

On February 23, 2019, defendant posted a message on Vk.com stating, in effect:

> These faggot Jews are burnt up when it comes to silencing me -
> Anyone who tries I'll kill their family WHILE extracting who sent
> em! Defend terrorist kikes and die maggots. Try me." Dkt. No.
> 51, ¶ 19.

On April 7, 2019, defendant posted a message on Vk.com stating, in effect:

> Lots of #Feds #FederalOfficers #StateDepartment #Aipac #JEWS
> will be killed when Americans see this Jewish trash plan. I'm ok
> with killing feds. As a matter of fact I am going to make this
> happen. They have met their ending here. (produced at HAAS
> 283).

Then, on or about May 9, 2019, defendant sent a text message to Federal

Official C stating, in effect:

> Any judge trying to prosecute me for the truth must die. That is
> treason and anti american. I will personally cut that ones throat!
> Dkt. No. 1, ¶ 12(e).

Defendant argued at his prior detention hearing that he did not threaten to

undertake violent acts himself. But defendant did, in fact, threaten to take matters

into his own hands and hurt people. Moreover, apart from his threats to take action

himself, the law does not require that defendant parrot in each charged statement

that he will be the one to commit the assault or murder. *See United States v. Buddhi*,

2014 WL 2042287 at *8 (N.D. Ind. May 19, 2014) ("numerous cases suggest that the

fact that defendant did not specifically state that he would be the one to commit the

violent acts does not necessarily mean that the statement is not a true threat as a

matter of law"). There is no fixed set of words required by statute; rather, the

question of whether defendant made a true threat is evaluated under pertinent facts

and circumstances. *United States v. Saunders*, 166 F.3d 907, 912 (7th Cir. 1999)

7

(interpreting 18 U.S.C. § 115(a)(1)(B)).  Here, defendant threatened Federal Official C on multiple occasions, and his expressed view that people who disagree with him should suffer harm illustrates that he is a danger to the community.

Defendant argues that he is presumed innocent of the charges and has a constitutional right to a jury trial.  Those statements are true, and they apply equally to every defendant in pretrial detention.  This Court assessed whether pretrial release was appropriate in this case and found that defendant should be detained.  Because defendant was, and still is, a danger to the community, this Court should deny his motion for pretrial release.

<div style="margin-left:40%">

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   /s/ *Erin Kelly*
       ERIN KELLY
       BARRY JONAS
       Assistant United States Attorneys
       219 S. Dearborn Street, Rm. 500
       Chicago, Illinois 60604
       (312) 353-5300

</div>

Dated:  April 17, 2020