UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ROBERT ANTHONY HAAS

No. 19 CR 486

Judge Edmond E. Chang

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT DEFENDANT'S STATEMENTS

## TABLE OF CONTENTS

I.     Factual and Procedural Background ............................................................. 1

II.    The Superseding Indictment .......................................................... 3

III.   Elements of a Section 115 (A)(1)(B) Offense ................................................. 4

   A. True Threat ......................................................................... 4

   B. Intent to Impede, Intimidate, and Interfere With ............................................. 5

IV.   Argument ......................................................................... 5

   A. The Context In Which Statements Are Made Bears On the Elements of a Section 115(a)(1)(B) Offense. ................................................................. 6

   B. The Proposed Statements Are Direct Evidence that the Defendant Committed the Charged Offense ........................................................................ 7

     1.    The Uncharged Texts, Voicemails and Statements Defendant Made to or About TFO Kostuchowski. ................................................. 8

         a.    Text Messages and Voicemail Messages to TFO Kostuchowski .......... 9

         b.    The June 11, 2019 Transport ........................................ 13

         c.    The Statements at the FBI Chicago Field Office .............................. 16

     2.    Statements Made by the Defendant to Special Agent Noordeloos During Interviews and Text Messages to Special Agent Rochowiak .................. 18

         a.    The January 25, 2018 Noordeloos Interview .................................... 18

         b.    The January 26, 2018 Noordeloos Interview .................................... 19

         c.    Text Messages to Special Agent Rochowiak .................................... 19

     3.    Defendant's Postings on Vk.com ........................................ 22

         a.    The "Robert Haas" Vk.com Account ............................................. 22

         b.    Video Postings to "Robert Haas" Vk.com Accounts ......................... 24

         c.    Postings to "Fox News" Vk. com Account ...................................... 25

C.  Alternatively, the Additional Proposed Statements Are Admissible Under Fed. R. Evid. 404(b) ............................................................................................... 30

V.      Conclusion ................................................................................................ 34

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this Motion *In Limine* to Admit Defendant's Statements. The government seeks to admit selected uncharged communications from the defendant in the form of text messages, voice mail messages, and online postings (collectively "the proposed statements"). The government seeks the admission of the proposed statements as direct evidence of the charged threats (the "Subject Threats"). Alternatively, the government seeks the admission of the proposed statements pursuant to Federal Rule of Evidence 404(b).

## I.      Factual and Procedural Background

On January 25, 2018, Department of State, Diplomatic Security Service (DSS) Special Agents David Noordeloos and Robert Rochowiak met with the defendant at his home in Ottawa, Illinois, because of disturbing messages the defendant sent to the Instagram account of Nikki Haley, former United States Ambassador to the United Nations. Special Agent Rochowiak left his business card at the defendant's home. The next day, on January 26, 2018, Special Agent Noordeloos interviewed the defendant again, after the defendant was arrested on an Indiana state charge for threatening another person.

During the course of the interviews, the defendant, in summary, stated that he believed that Jewish people committed the September 11, 2001 attacks on the World Trade Center in New York, that the Talmud directs Jewish people to commit heinous acts against children, and that the United States government is controlled by rich, Jewish families, such as the Rothschild family, as well as the American Israeli Political Action Committee (AIPAC). The defendant described Jewish people as terrorists. The defendant stated that, because the United States government is controlled by Jewish people, individuals who work for the United States government, including law enforcement agents, are treasonous terrorists, and that terrorists should be killed. The defendant stated he was

going to "teach the world what they need to know and they're going to kill people. I'm going to incite it."

Immediately after the January 2018 interviews and continuing through at least April 2019, the defendant began to send a multitude of threatening and harassing text messages to Special Agent Rochowiak.

On May 8, 2019, as a result of these text messages and other internet postings the defendant made, Task Force Officer ("TFO") Joseph Kostuchowski and State Department Special Agent Matthew Kelley went to the defendant's work site to interview him and to attempt to defuse the situation. The defendant was confrontational and not cooperative. Later the same day, May 8, 2019, the defendant began sending harassing and threatening text messages to TFO Kostuchowski, as well as leaving him disturbing voice mails, and the defendant continued to do so in the days that followed.[1]

During the same time span as the defendant's threatening communications to Special Agent Rochowiak and TFO Kostuchowski, the defendant posted messages containing similarly threatening content on VK.com, a Russian social media forum. The defendant used the account names of "Robert Haas" and "Fox News" for these postings. The postings contained explicit threats to kill law enforcement agents.

The defendant was arrested in this case on June 11, 2019, based on a charge contained in a complaint. The arrest occurred in Ottawa, Illinois. The basis of the charge in the complaint was a voice mail message from the defendant to TFO Kostuchowski. An Illinois State Trooper, Richard Mullen, transported the defendant from Ottawa to the FBI Chicago Field Office. During the

---

[1] The defendant obtained TFO Kostuchowski's phone number after TFO Kostuchowski called the defendant to schedule the meeting.

transport, which was audio and video recorded, the defendant made threatening oral statements directed against TFO Kostuchowski. FBI agents interviewed the defendant when he arrived at the FBI Chicago Field Office regarding the threats against TFO Kostuchowski.

## II. The Superseding Indictment

On September 11, 2019, defendant was charged by a superseding indictment with five counts of threatening to assault or murder Federal Official C (TFO Kostuchowski), in violation of Title 18, United States Code, Section 115(a)(1)(B). Dkt. No. 38. The defendant made the threatening communications charged in the superseding indictment between May 8, 2019, the date of the defendant's encounter with TFO Kostuchowski, and June 11, 2019, the date of the defendant's federal arrest. The charged communications consist of texts and voice mails the defendant directed to TFO Kostuchowski and some of the oral statements the defendant made during the June 11, 2019 transport.

More specifically, the superseding indictment charges the defendant with sending TFO Kostuchowski the following threatening text messages on May 8 and May 9, 2019 (Counts One, Two, and Three):

(a) Take off the gun and badge like you said you would pussy. Come meet true evil. I got something for your terrorists. (Count One)

(b) I thought you wanted to chat you monkey jew. You coward old man. You know I get what I want and I think you deserve death. (Count Two)

(c) I'm not afraid to walk out my door in the morning. You should be however considering you support Jewish terrorism and your anti-American bullshit is going to get you killed. (Count Three)

The superseding indictment also charges the defendant with leaving TFO Kostuchowski the following voice mail message on May 11, 2019 (Count Four):

Why is your phone off you baby dick-sucking kike. What if an American is in danger and needs your help. Fucking loser Jew-lovin piece of shit. You are guilty of fucking treason and you need a bullet in your fucking head for

3

it. Telling me you support Israel. Motherfucker. You support Americans bitch you better watch your fucking mouth boy.

The superseding indictment also charges defendant with making the following threatening oral statements about TFO Kostuchowski on June 11, 2019, while being driven to the FBI Chicago Field Office (Count Five):

(a)     He needs to die. Am I wrong? This is pro-terrorist right here what this guy's doing. That's a fact. A jury of my peers will say kill this motherfucker. I know it. He needs a fucking 12-gauge to his fucking throat and pull the trigger and pop his head off his fucking shoulders. And it's gonna happen.

(b)     I don't think this guy can protect himself from me.

(c)     I think I'm going to spend every waking moment of my life making sure that this [Federal Official C] gets fucking killed. By an American citizen.

(d)     I don't like terrorists in my country. It is my constitutional duty to kill them.

(e)     When I look at that Joe's smiling little smug little face I see one of those Israelis planting explosives in the World Trade Center, that's what I see. Terrorist. He's a rat. I think rats need to be put in dog crates and drowned.

(f)     I don't care if it's ten years from now. I'm going to get this fucking faggot terrorist motherfucker.

## III.    Elements of a Section 115 (A)(1)(B) Offense

### A.    True Threat

The superseding indictment charges the defendant with violating Title 18, United States Code, Section 115(a)(1)(B). This charge requires the government to prove that the Subject Threats were true threats. *United States v. Pacione,* 950 F.2d 1348, 1355 (7th Cir. 1991). A true threat is a serious expression of intent to commit unlawful physical violence against another person or a group of people. *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019). "[I]n establishing that a threat was made in the context of § 115(a)(1)(B), the government must establish that the statement was made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a

4

statement as a serious expression of an intention to inflict bodily harm upon or to take the life of another." *United States v. Saunders*, 116 F. 3d 907, 912-13 (7th Cir 1999) (citing *United States v. Khorrami*, 895 F.2d 1186, 1192-1193 (7th Cir. 1990)). A true threat is distinguished from idle or careless talk, exaggeration or something said in a joking manner. *Khan*, 937 F.3d at 1051.

### B.     Intent to Impede, Intimidate, and Interfere With

The government must also prove that the defendant acted with the intent to impede, intimidate, and interfere with such law enforcement officer while he was engaged in his official duties, or with the intent to retaliate against such law enforcement officer on account of the performance of his official duties. *Saunders*, 166 F.3d at 912-913.

## IV.     Argument

The government seeks to admit statements made by the defendant beyond those charged in the superseding indictment as direct evidence of the Subject Threats or, alternatively, as evidence permissible under Federal Rule of Evidence 404(b) as evidence of defendant's intent, and for a few statements discussed below, to establish identity.

The proposed statements that are the subject of this motion fall into the following six categories: (a) text messages and voice mails to TFO Kostuchowski, and uncharged statements made on June 11, 2019, during the transport to the FBI field office and at the FBI field office, about TFO Kostuchowski; (b) statements to DSS Special Agent Noordeloos and text messages to DSS Special Agent Rochowiak; and (c) postings on defendant's two Vk.com social media accounts.

All of the proposed statements not only prove that the Subject Threats were true threats, but equally establish the defendant's intent that, when law enforcement officers confront him, to attempt to interfere with their performance of duties through the use of threats, or to retaliate against them on account of the performance of his official duties.

A.    **The Context In Which Statements Are Made Bears On the Elements of a Section 115(a)(1)(B) Offense.**

The jury, in determining whether statements are "true threats," must make inferences "from the background and context about [defendant's] demeanor at the time he made the statements—to decide, under the circumstances, whether he conveyed the impression that he was serious or joking." *United States v. Parr*, 545 F.3d 491, 498 (7th Cir. 2008). The background and context in which a defendant made the statements is also probative of whether the defendant intended the statements to impede, intimidate, or interfere with a law enforcement officer's performance of duties. "[B]ackground evidence [is] also relevant to whether [defendant] *intended* that his statements be understood as a threat." *Id.* (emphasis in original).

The government will demonstrate that the defendant intended the charged communications as true threats by pointing to the defendant's words, both charged and uncharged, their commonly understood meaning, defendant's tone when making these communications, the circumstances under which they were made, and the escalating nature of defendant's communications. As numerous courts have held, these grounds allow the jury to assess the sincerity of defendant's threats and whether a reasonable observer would interpret those statements as true threats. *See United States v. Khorrami*, 895 F.2d 1186, 1194 (7th Cir. 1990) (admission of uncharged "harassing telephone calls" made to the victim permissible "to demonstrate a continuous pattern of telephone calls, threatening in nature, and relevant as to both Khorrami's identity and intent"); *Saunders*, 166 F.3d at 917 (analyzing the admission of the entirety of a threatening letter sent to a judge, finding the letter probative of defendant's intent to instill fear in the victim, and concluding that the "jury was entitled to evaluate whether Mr. Saunders' inclusion of this earlier incident in the letter was designed to ensure that this threat of harm to Judge Manning would be taken seriously"); *United States v. Stahmer*, 755 F. App'x 214, 217-18 (4th Cir. 2018) ("[T]he evidence

6

[of a prior threat to law enforcement] was 'necessary' to demonstrate that Stahmer had the requisite intent and that the threats constituted true threats, as defense counsel argued at trial that the threats were not serious."); *United States v. Springer*, 753 F. App'x 821, 828 (11th Cir. 2018) (evidence and testimony regarding Springer's support to ISIS were properly admitted to show "that his threats were serious"); *United States v. Viefhaus*, 168 F.3d 392, 398 (10th Cir. 1999) ("The only way a jury could assess the sincerity of Viefhaus' beliefs, as well as the likely effect Viefhaus' message would have on an objective listener, was to examine the circumstances in which the comments were made.").[2]

### B. The Proposed Statements Are Direct Evidence that the Defendant Committed the Charged Offense.

The proposed statements are admissible because they are direct evidence that the Subject Threats are true threats and that the defendant made them to impede, intimidate, or interfere with TFO Kostuchowski in the performance of his official duties, and with the intent to retaliate against TFO Kostuchowski on account of the performance of his official duties. "[D]irect evidence of a crime is almost always admissible against a defendant." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010); *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged.").

The proposed statements—described in further detail next—arose out of the same transactions or series of transactions as the Subject Threats, occurred during the same time frame, and involve the same individuals or category of individuals (law enforcement agents), as the

---

[2] *But see United States v. Nicholas*, 2019 WL 3774622 at *2 (W.D. Virginia, August 12, 2019) (admission of unsent threatening letter to the President found to be unrelated to charged threats to judges).

charged offenses.[3] For purposes of the "true threat" determination, they thus provide background and context for the charged offenses. *See Saunders,* 116 F.3d at 912-13 (requiring government to establish that the charged statements were made in a context wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of an intention to inflict bodily harm upon or to take the life of another).

More specifically, the proposed statements establish the defendant's rationale for lashing out at TFO Kostuchowski and demonstrate that the defendant's words were not idle chatter, political talk, or absurd humor. The defendant meant his words to chill TFO Kostuchowski in the performance of his job. The defendant's additional statements, when viewed over a spectrum of time and directed to a variety of audiences, demonstrate that the defendant uses his words as weapons. The defendant repeatedly expresses his view that, because federal agents, including TFO Kostuchowski, work for, and defend "their bosses" and the government, then the agents themselves are "treasonous" terrorists and the punishment for treason is death. Hence, in the defendant's mind, his threats were real because they were justified.

### 1. The Uncharged Texts, Voicemails and Statements Defendant Made to or About TFO Kostuchowski.

The government seeks to admit as direct evidence additional text messages and voicemail messages the defendant sent to, or left for, TFO Kostuchowski and statements the defendant made about TFO Kostuchowski on June 11, 2019, during his transport to, and post-arrest interview at,

---

[3] In *Stahmer*, the Fourth Circuit concluded that the district court there did not abuse its discretion in admitting under Rule 404(b), in a trial involving a June 2016 threat to assault a Coast Guard officer, evidence that "during a 2017 arrest for public intoxication, [the defendant] was combative and threatened to kill a police officer and his family, which the officer construed as a legitimate threat." 755 F. App'x at 218; *see also United States v. Stahmer,* 2:17-cr-00123-RAJ-LRL (E.D.Va August 10, 2017) Dkt. 3. *Stahmer* explained that "the evidence was relevant, as the 2017 incident was close in time and highly similar to the incident at issue" and that "the evidence was 'necessary' to demonstrate that [the defendant] had the requisite intent and that the threats constituted true threats." *Id.*

the FBI Chicago Field Office. These proposed statements occurred during the same time frame (May 8, 2019 to June 11, 2019), involve the same victim (TFO Kostuchowski), and much of the same content as the Subject Threats. The proposed statements in each of these categories add necessary background, context, and meaning to the Subject Threats and demonstrate the defendant's intent.

### a. Text Messages and Voicemail Messages to TFO Kostuchowski

On May 8, 2019, TFO Kostuchowski, along with other agents, wanted to interview the defendant regarding threatening text messages he had earlier sent to DSS Special Agent Rochowiak, as well regarding defendant's other concerning internet postings. During this attempted interview, the defendant was not cooperative and the agents were not successful in defusing his anger. After the attempted meeting, the defendant immediately turned his ire towards TFO Kostuchowski and he thereafter barraged TFO Kostuchowski with unrelenting texts and voice mail messages.

During a two-day period, beginning May 8, 2019, the defendant sent at least 71 text messages to TFO Kostuchowksi. Three of the messages form the basis of the charges in Counts One through Three. The government seeks to introduce the following additional 14 messages from this 71-text set:

1. "Wanna play. Any American who learns this will want you dead. That's a fact. lol."

2. "Why don't you call me private some more and see if that doesn't piss me off enough. lol."

3. "Anyone enforcing Judaism needs to die bitch. Don't force an american. You violated my rights already boy. You owe me with your kike bullshit Moloch worshipping paedo crap."

4. "You are trash and you will pay!"

5.      "Get in my way old man. You're washed up. Don't play with real men you coward terrorist bitch. lol. Physically you're a joke. Mentally you're a donkey. You don't stand a chance."

6.      "You're now on my list. You better pray people don't wake up while your bloodline is alive. I am telling the world what you support personally jew boy."

7.      "You got children. Little heb trash you teach this talmud bullshit? That's very bad decision making being a kike." (Emojis omitted.)

8.      "They and their security guards will be tortured for their war crimes and treason against humanity. I dare you to get in the way pops! Make me snap on you."

9.      "I think the children at your kid's school need to know what your family believes."

10.     "There's a reward dead or alive for some of your kike masters in moscow. Do you believe you can stop me from collecting that shit?" (Emojis omitted.)

11.     "This is my target to teach angry veterans their true enemy!" Preceding the statement is a picture of an individual holding a weapon with the statement over the picture "Do you know why the DHS lists returning veterans as a domestic terror threat? Because many of them have figured out who the real enemy is and they have the training to do something about it."

13.     A link to vk.com. The link shows pictures of Haas along with a quote.[4]

14.     "Joe. You're a yiddish polock. Not a semite. You paedophile jew maggot. Come try to stop me and see what happens to you and yours. lolol."

Between May 11 and May 14, 2019, the defendant then left five voice mails for TFO Kostuchowski. One of the messages is charged in Count Four. The government seeks the admission of the other four messages which are described below:

---

[4]     This text message shows that defendant directed TFO Kostuchowski to the Vk.com website, which, as discussed below, contains a number of threats against law enforcement. The introduction of this text message is also relevant to the issue of identity, as it would establish that defendant had an account on Vk.com and that it was defendant who posted the Vk.com messages that the government also seeks to admit into evidence.

1. On May 11, 2019, the defendant left the following voicemail: "You owe me faggot. You better watch your fucking mouth. Bitch. Fucking talking Israeli bullshit hasbera around me again boy. Fuck it."

2. On May 12, 2019, the defendant left the following voicemail: "I thought you wanted to chat you little Jew loving bitch. Cat got your tongue? Why do you support baby raping terrorists? Fucking faggot. Supporting Israel is treason. Better watch that shit, son."

3. On May 13, 2019, the defendant left the following message: "Fucking bitch. That's what I thought motherfucker. Why don't you come see me again, faggot. You wanna chat bitch? Come on motherfucker, let's go. That's what I thought. You'd better stay fucking hiding, coward."

4. On May 14, 2019, the defendant left the following message: "Joe Kostuchowski. I thought you wanted to chat you little faggot bitch. You don't like the truth do you? Do some fucking research before you come around trying to intimidate American citizens who don't give a fuck about you. I would rather bust your fucking head open than take heed from your little faggot Zionist Jew baby dick sucking mouth. Fuck you bitch. You'd better fucking watch who you play with, old man. Fucking shit will blow up in your face, playing with a real American. You understand me, bitch?"

The texts and voice mail messages to TFO Kostuchowski, constitute direct evidence of the charged offenses because they arose out of the same messages as the Subject Threats and, for purposes of the "true threat" determination, they provide context for the Subject Threats. For example, included within the uncharged text messages sent by the defendant to TFO Kostuchowski on May 8 and May 9, were communications with the following content: "Anyone enforcing Judaism needs to die bitch," "Joe. You're a Yiddish polock. Not a semite. You paedophile jew maggot. Come try to stop me and see what happens to you and yours. lolol," and "Anyone enforcing Judaism needs to die bitch. Don't force an american. You violated my rights already boy. You owe me with your kike bullshit Moloch worshipping paedo crap." When read in conjunction with the defendant's statements to law enforcement regarding his belief that Jewish people are terrorists and control the United States government, these messages are direct evidence that the threat charged in Count Three—"I'm not afraid to walk out my door in the morning. You

11

should be however considering you support Jewish terrorism and your anti-American bullshit is going to get you killed" —was a true threat, and not a joke or a political statement.

The sheer volume of messages sent to TFO Kostuchowski (71 text messages over two days and five voice messages) is also indicative of the defendant's intent to interfere with the TFO's duties as a law enforcement officer as well as to intimidate the TFO. But the content of the messages, not just their volume, are necessary to establish the defendant's intent. Without the content, the jury could incorrectly conclude that the defendant's additional text messages were benign. In fact, quite the opposite is true. As an example, one of the uncharged text messages threatened TFO Kostuchowski's children, stating: "You got children. Little heb trash you teach this talmud bullshit? That's very bad decision making being a kike." This message demonstrates the devastating impact the defendant intended through his words, as references to children in this vile manner wreak havoc with any parent. The additional text messages will thus provide the jury with a more complete and accurate understanding of the defendant's intent to intimidate the TFO and interfere with the performance of his duties.

The voicemail the defendant left for TFO Kostuchowski on May 12, 2019 also demonstrates the defendant's intent and that his communications constitute true threats. The defendant stated in the voice mail, "I thought you wanted to chat you little Jew loving bitch. Cat got your tongue? Why do you support baby raping terrorists? Fucking faggot. Supporting Israel is treason. Better watch that shit, son." This message contains similar language as the text message charged in Count Two, where the defendant texted: "I thought you wanted to chat you monkey jew. You coward old man. You know I get what I want and I think you deserve death." These constant challenges to TFO Kostuchowski constitute evidence of the defendant's intent to intimidate and they demonstrate, by their destructive words, that the Subject Threats were not the defendant's isolated attempt to blow off steam.

12

### b. The June 11, 2019 Transport

On June 11, 2019, the day of his arrest and while being transported from Ottawa, Illinois, to the FBI field office in Chicago, the defendant engaged in a conversation with Illinois State Trooper Rick Mullen. This conversation was audio and video recorded. The transport lasted approximately one hour and twenty minutes. The government seeks permission to play the following 25 clips. The total, combined time of these 25 clips is approximately 17 minutes.[5]  As identified below, Clips 7, 14, 17, 19, 23, and 24 include Subject Threats charged in Count V.

> **Clip 1 -**  Depicts Officer Mullen placing a sign in the ISP vehicle stating that the vehicle has a recording device.
>
> **Clip 2** – The defendant stated the FBI wanted him to stop and he's going to start World War III.
>
> **Clip 3** – The defendant stated that he asked the FBI what they're going to give him to stop and that he then "lost it" and "snapped."  The defendant stated he told the FBI to take off their gun and badge and he'll show them "who's all talk."
>
> **Clip 4** – The defendant stated that he told TFO Kostuchowski that he's guilty of treason and that he's supporting a terrorist.
>
> **Clip 5** – The defendant stated that TFO Kostuchowski knows that the Israelis blew up the World Trade Center and that he is defending them. The defendant stated that Joe is "guilty of treason. 100%"
>
> **Clip 6** – The defendant stated that he probably needed to be arrested and calm down. He then stated that he's "going to get somebody. A real terrorist" and he's "going to pop them in the fuckin forehead. It'll probably be this guy, honestly. Cause he is a fucking terrorist." The defendant then stated "he would be my first target."
>
> **Clip 7 (Subject Threat)** – The defendant stated, "Jews blew up the World Trade Center and I'm getting arrested for threatening the FBI? Ha. For not doing their fucking jobs?  Dude, he needs to die. Am I wrong? This is pro-

---

[5]     The segments of the law enforcement interviews summarized in this motion are segments that the government has decided to play at the time of the filing of this motion. The government may, prior to trial, decide not to play all of the interview segments addressed in this motion or may decide to pare down some of the clips.

30 terrorism right here, what this guys doing. A jury of my peers, they'll say kill this motherfucker. I know it. He needs a fucking 12 gauge to his fucking throat, and pull the trigger, and pop his head off his fucking shoulders. It's gonna happen. I'm gonna teach the world what that fuck happened and they're gonna kill this faggot. They're probably gonna kill his fucking family. And he don't like me telling you that. I've been telling him that." The Subject Threat charged in Count V(a) is included in this segment.

**Clip 8** – The trooper confirms that defendant has been discussing someone named Joe.

**Clip 9 -** The defendant stated the State Department contacted him but will not continue to deal with him because they know he's right. He stated that they have to keep sending fresh guys after him and that he's been dealing with TFO Kostuchowski for about a month. He stated that he had been texting TFO Kostuchowski and that he's guilty of treason. The defendant stated that he sent TFO Kostuchowski proof that Jews blew up the World Trade Center and killed millions of Russians, and "when Americans learn it, they're going to kill these people." He then continued on about Jewish people.

**Clip 10** – The defendant stated that TFO Kostuchowski knows everything he described in Clip 9 and that "if that's the case, he does need to die."

**Clips 11** – The defendant accused TFO Kostuchowski of having the defendant arrested for threatening him and that he "needs to die."

**Clip 12** - The defendant states, "It's to the point now where somebody is going to say something online and I'm going to go smash some innocent person. If they say something stupid like people like this guy right ahead of us. Setting it up."

**Clip 13** – The defendant stated, in response to a question from the trooper, that he told TFO Kostuchowski, via text, that he was guilty of treason and that was going to end up getting killed, and that humanity was coming for him and his family.

**Clip 14 (Subject Threat)** – The defendant stated, "You never know who or what you're playing with. I don't think this guy can protect himself from me, really." The Subject Threat charged in Count V(b) is included in this segment.

**Clip 15 -** The defendant stated that he is tired of the world, that he's tired of people supporting terrorism and that they need to be "wiped from the planet. It's genetic cleansing, it really is."

14

**Clip 16** – Defendant stated, "Things like this, just support my, everything that I say. Makes me wanna start world war three and lead humanity to this man's door." The defendant also discussed his State Department interviews and that the agents told him he threatened Ambassador Haley.

**Clip 17 (Subject Threat)** – I think I'm going to spend every waking moment of my life making sure this Joe Kustuhuskie gets fucking killed. By an American citizen, probably. Ex-military will do it. The Subject Threat charged in Count V(c) is included in this segment.

**Clip 18 -** The defendant stated that he is going to find out where TFO Kostuchowski lives and he's going to post the address on every card he hands out to every American soldier who lost a limb for Israel, because of TFO Kostuchowski's support for Israel.

**Clip 19 (Subject Threat) –** The defendant stated, "I don't like terrorists in my country. It's my constitutional duty to kill them. And yours too, you know that? It is your oath to kill treasonous terrorists." The Subject Threat charged in Count V(d) is included in this segment.

**Clip 20** – Defendant stated, "I think the best place for my, for me to expose these people, to cause the most damage, is outside the VA Hospital," and stated that he's going to start a war by going to veterans at VA hospitals.

**Clip 21** – The defendant stated that "these terrorists needed to be wiped from the planet."

**Clip 22** –Defendant stated, "Dude, I know more than anybody, I know more than these fucking faggot FBI guys. And the ones who do, are in on it. They all need to be killed. The higher ups that are in on it."

**Clip 23 (Subject Threat)** –Defendant stated, "Yeah, when I look at that Joe's smiling, 3 little smug little face I see one of those Israelis planting explosives on the World Trade Center, that's what I see. Terrorist. A rat. I think rats need to be put in dog crates and drowned." The Subject Threat charged in Count V(e) is included in this segment.

**Clip 24 (Subject Threat) –** Defendant stated, "Yeah, I don't care if it's ten years from now. I'm going to get this fucking faggot for this shit. Fucking terrorist motherfucker**."** The Subject Threat charged in Count V(f) is included in this segment.

**Clip 25 -** The defendant stated that 300 people will be killed but that they have security guards, like "this Joe guy" so it will probably be 600 – 700 people killed. The defendant then accused the Monsanto and DuPont families of destroying the planet and that TFO Kostuchowski would lay

down his life for them, "not a good decision to make." He stated that "they're trying to bait me, saying I'm all talk.'

These additional statements constitute direct evidence that the Subject Threats were true threats and that the defendant intended them to interfere with and to retaliate against TFO Kostuchowski for performing his official duties. Both the Subject Threats and the proposed statements contain the defendant's statement that TFO Kostuchowski "needs to die." These proposed statements are directed to the same victim and occurred in the same time frame as the Subject Threats.

### c.    The Statements at the FBI Chicago Field Office

FBI Special Agent Christopher Potts interviewed the defendant for approximately one hour at the FBI Chicago Field Office.[6] During that interview, the defendant discussed his encounter with TFO Kostuchowski and his belief that federal agents are terrorists. The government seeks to admit the following 6 clips that total approximately 8 minutes.

> **Clip 1** – The defendant stated that TFO Kostuchowski was guilty of treason because he supports Israel.
>
> **Clip 2** – The defendant discussed his May 8 meeting with TFO Kostuchowski and stated that he told the TFO that he is telling the truth online and when people learn the truth the TFO's bosses are going to get killed.
>
> **Clip 3** – The interviewing agent and the defendant discussed the phone number that the defendant used to text TFO Kostuchowski.
>
> **Clip 4** – The defendant stated someone working for the American government is a terrorist. He stated that he knows more than the agents and he can get more information online from his friends in Russia. The defendant then explained his meeting with the TFO. Specifically that the Holocaust never happened. He said the TFO was pro-Israel and that, afterwards, he called the TFO and challenged him to take off his gun and badge off and come back. He said the TFO said the defendant was all talk and a keyboard warrior. He then discussed his threats to Nikki Haley and

---

6    The videotape of the interview shows that the defendant is handcuffed to a railing.

his interview with the DSS agents, including his posting of DSS Agent Rochowiak's business card online because the defendant believes the agent is a terrorist. He said Nikki Haley is a terrorist and the agents are terrorist security guards.

**Clip 5** – The defendant stated that he posted a video of his May encounter with TFO Kostuchowski on Youtube and Vk.com. He said he called the video "baby dick sucking federal terrorist."[7]

**Clip 6** – The defendant stated that he was "fucking angry." He called the charge a joke and reiterated that TFO Kostuchowski supports terrorism and he knows it. "That's what makes a terrorist." The defendant stated because the TFO knows and supports that Jews blew up the World Trade Center and does not care. "He's doing his job." –

The proposed interview segments constitute evidence that the Subject Threats were true threats. For example, during the interview, the defendant accused the TFO of treason and called the TFO a terrorist. This statement provides context to, and explains the defendant's intent behind, the threat identified in Count Five: "I don't like terrorists in my country. It's my constitutional duty to kill them." It is very clear that the defendant was not joking when he expressed his desire is to see the TFO (and all federal agents) killed because he believes they are terrorists.

The proposed statements also show that it was the defendant who sent the Subject Threats to TFO Kostuchowski and that he did so because of his job as a law enforcement officer and not for some other purpose. For example, the defendant stated during his FBI post-arrest interview, that TFO Kostuchowski supports terrorism and he knows it. "That's what makes a terrorist." The defendant stated the TFO knows and supports that Jews blew up the World Trade Center and does not care because "[h]e's doing his job."

---

[7] The introduction of this statement is also relevant to the issue of identity, as it would establish that defendant had an account on Vk.com and that it was defendant who posted the Vk.com messages that the government also seeks to admit into evidence.

## 2. Statements Made by the Defendant to Special Agent Noordeloos During Interviews and Text Messages to Special Agent Rochowiak

The government seeks to admit as direct evidence statements the defendant made to DSS Special Agent Noordeloos on January 25, 2018 and January 26, 2018 as well as text messages the defendant sent to Special Agent Rochowiak after those interviews took place. These statements and texts are outside the time frame charged in the superseding indictment and involve different law enforcement officers. The statements and texts, however, nonetheless constitute direct evidence of the Subject Threats because they provide necessary background and context for TFO Kostuchowski's encounter with the defendant and defendant's subsequent communications to, and about, the TFO.

### a. The January 25, 2018 Noordeloos Interview

On January 25, 2018, DSS Special Agent Noordeloos interviewed the defendant at the defendant's home because of messages the defendant sent to Ambassador Haley's Instagram account. The interview lasted approximately an hour and was covertly audio recorded by Agent Noordeloos. The government is seeking the admission of two audio clips from that interview totaling approximately 2 minutes.

> **Clip 1** –The defendant refers to telling Federal Official A that the official tells Americans lies in support of Israel and the punishment is hanging until death. Defendant also states, "If saying that is wrong, you know what, whoever made that law needs to be f-king stabbed in the f-king throat multiple times with a f-king spoon. Telling the truth is not a crime and anybody who wants to make it one should be followed home and f-king stabbed to death." The agent tells defendant he has freedom of speech up to hate speech, and the defendant says that if he is charged with an internet threat he'll "do his two weeks" and then "I might go visit them because they pushed me to that f-king point."
>
> **Clip 2** – The defendant stated to the agent that the "people trying to harm America are your bosses." The defendant and the agent discussed what a threat is and the defendant stated the words "you need to be followed home and exterminated" as opposed to "I will follow you home" is not a threat. The agent told him that "I think that crosses the line with fighting words."

18

These clips help show defendant's later intent with respect to TFO Kostuchowski. Despite Agent Noordeloos' express warnings to the defendant—for example, "I think that crosses the line"–the defendant nevertheless went ahead and made the Subject Threats. The warning puts his subsequent behavior in context and is evidence of his intent.

### b. The January 26, 2018 Noordeloos Interview

On January 26, 2018, after the defendant's arrest on an unrelated Indiana state charge involving a threat, DSS Special Agent Noordeloos interviewed the defendant at the Ottawa, Illinois. police station. This interview was videotaped. The defendant was in custody but the defendant was not in handcuffs. There is no reference to the defendant being under arrest on the video recording. The interview lasted approximately 50 minutes. The government proposes the admission of two clips from the interview that total less than 2 minutes:

> **Clip 1** – The defendant stated that he "thinks all feds are assholes. I hate you guys because you work for a terrorist" and that he does not view agents as American citizens.

> **Clip 2** – The defendant accused the agent of working for terrorists. The defendant stated that "things are coming to an end," that "he's going to push for that," and that "a lot of people are going to die and it's going to be your bosses." The defendant stated that every war was for profit, that the agent profits from them, so the agent was "a terrorist." The defendant told the agent that he [the agent] works for terrorists and that AIPAC are his bosses.

These clips, like the other proposed statements, demonstrate that the defendant's communications with or statements about TFO Kostuchowski were true threats. They demonstrate the defendant's hatred toward federal agents, and critically, that such hatred included the desire to see them die (e.g., "a lot of people are going to die and it's going to be your bosses").

### c. Text Messages to Special Agent Rochowiak

During the January 25, 2018 interview, DSS Special Agent Rochowiak left a business card at the defendant's home. The business card contained Agent Rochowiak's cell phone number.

Over the next 14 months—between January 26, 2018, the day after the interview, and April 2, 2019—the defendant sent at least 73 text messages to Agent Rochowiak's cell phone. The defendant personally attacked Agent Rochowiak in many of the messages. The defendant, for example, called Agent Rochowiak a terrorist and other derogatory names. Agent Rochowiak never responded to the texts. The government seeks to admit examples of these text messages as evidence that, as to the Subject Threats, the defendant intended that his words intimidate, interfere with, and retaliate against law enforcement officers.

More specifically, the government seeks to introduce the following five sets of text messages that the defendant sent to Agent Rochowiak's cell phone:

1. On December 30, 2018, the defendant sent by text a link to a posting on a Vk.com wall:

   (a) "Fox News. Fucking bitch terrorist protecting maggot. Don't litter your trash 'business card' at my house retard. You people are pathetic and stupid. I'm bringing humanity to get you. I'm considering handing our talmud verses and these israelis in WTC photos outside your office" (Emojis omitted.)

   (b) "Why don't you reply bitch terrorist. You created your own problem here. Now youre gonna pay whats due protecting terrorists. I would go hide in israel if i was you!!!"

   (c) "If you knew how I felt in my heart about you fucking terrorists you would leave my country with your family"

2. On February 22, 2019, the defendant sent the following text message: "Fucking faggot fed terrorists will pay son."

3. On March 19, 2019, the defendant sent the following text message: "It is my duty to kill treasonous terrorists son"

4. On March 19, 2019, the defendant sent the following text message: "That's you maggot terrorists son. You still in MY country bitch? Not for long. Come try to intimidate me again bitch. All your treasonous shot callers will be shot in the face along with their future terrorist jew lover kids. You little jew mossad bitch. You are all monkey and will pay flesh reparations for your crimes boy! Come point a gun at me again. Dare ya bitch! Give me a mother fucking reason boy!!!!

20

5.      On March 27, 2019, the defendant sent the following text message: "Don't forget what you bitch feds serve. I want to see you full of holes by a militia"

The Rochowiak texts constitute direct evidence of the Subject Threats because they demonstrate the defendant's intent to intimidate when agents have confronted him. The jury can consider the words the defendant used with Special Agent Rochowiak and the volume of texts he sent to that agent in determining whether the defendant intended to intimidate, impede, interfere with, and retaliate against TFO Kostuchowski's for performing his official duties. The jury can assess the defendant's intent as to TFO Kostuchowski by assessing what the defendant said to another law enforcement officer who also encountered the defendant face to face. For example, the defendant texted Special Agent Rochowiak on March 12, 2019 and stated, "It is my duty to kill treasonous terrorists son." This text message, read in conjunction with his January 26, 2018 statement to Special Agent Noordeloos that the agents work for terrorists, prove the defendant wanted to interfere with the agents' duties by either intimidating them with threats or preventing them from fulfilling their duties by killing them.

The defendant implicitly acknowledged that he intended to interfere with law enforcement agents' duties when he posted Special Agent Rochowiak's business card online. The defendant, during his post-arrest interview with the FBI, explained that he posted the business card because he believes that anyone working for the government is a terrorist. The defendant also stated, during his FBI interview, that he posted a video of his May 8, 2019 encounter with TFO Kostuchowski online to YouTube and Vk.com. The defendant told the FBI that he titled the video "baby dick sucking federal terrorist," which is what he called TFO Kostuchowski in the voice mail charged in Count Four.

The defendant's statements during the Noordeloos interviews and his texts to Special Agent Rochowiak also provide the jury with necessary background about the linear chain of events

21

leading to the charges against the defendant in this case. For example, the Noorderloos interviews explain how and why the defendant started texting Agent Rochowiak. The text messages, and their threatening and harassing nature, led to TFO Kostuchowski's attempt to meet with the defendant on May 8, 2019. Similarly, TFO Kostuchowki's May 8, 2019 encounter led the defendant to send text messages to TFO Kostuchowski and to leave him voice mails. These events led, ultimately, to the charges in this case. It is important for the jury to be presented with the complete picture of the defendant's interaction with the government as it relates to the Subject Threats. *United States v. Mabie*, 862 F.3d 624, 632-34 (7th Cir. 2017) (affirming admission of other communications made by defendant to provide context and background for the charged threats); *United States v. Jongewaard*, 567 F.3d 336, 341 (8th Cir. 2009) (affirming admission of evidence of defendant's previous threats, stating statements were admissible to provide 'context for the indicted conduct' and to show the 'seriousness of [later] threats") (internal citation omitted).

### 3. Defendant's Postings on Vk.com

During the course of the investigation, the government discovered that the defendant posted messages and videos to a Russian social media website called Vk.com under account names "Robert Haas" and "Fox News."

### a. The "Robert Haas" Vk.com Account

The defendant maintained a Vk.com account under the name "Bobwashere" that was associated with the screen name "Robert Haas." The government will establish that the defendant was the person who posted to this account through evidence that shows: (a) the name "Robert Haas" is the defendant's name; (b) a picture associated with the account that appears to depict the defendant; (c) defendant told the FBI during the post-arrest interview that he posted information on Vk.com, including a recording of his May 2019 meeting with TFO Kostuchowski; (d) the defendant stated in an email from the MCC Chicago that he has a social media account on Vk.com;

(e) the defendant sent a text message to TFO Kostuchowski with a link to a Vk.com account; and

(f) the content of the postings are similar to statements the defendant made to law enforcement.

The government reviewed messages and videos that the defendant posted to this account between December 31, 2018, and July 1, 2019. Many, if not all, were vitriolic statements against Jewish people and law enforcement. The messages included threats to kill law enforcement officers. The government is seeking the admission of the following 10 messages to show that the Subject Threats were true threats and to support the government's position that the Subject Threats were meant to interfere with TFO Kostuchowski's duties as a law enforcement agent:

1. On or about December 30, 2018, the defendant posted a message on Vk.com with a photograph of Agent Rochowiak's business card and a reference to defendant's meeting with State Department officials

2. On or about January 21, 2019, the defendant posted a message on Vk.com, stating "Telling the whore #NikkiHaley the bitch is guilty of treason and the punishment for treason is hanging until death; isn't a threat you lying treasonous pig faggot terrorists. These maggots beg for extermination at the state department. They are equally as guilty of treason trying to intimidate me for telling the truth. I have every right to kill them…" and "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death."

3. On or about February 7, 2019, the defendant posted a message on Vk.com, stating "If I thought feds were following me around I would have to hurt them for their unamerican activities aka. TREASON."

4. On or about February 13, 2019, the defendant posted a message on Vk.com, stating "If I am prosecuted for telling the truth I'm killing EVERYONE involved. Down to the bitch Jews crying pressing charges. Jews will pay for their crimes against humanity in my lifetime. Bet your ass bitches. I'm coming to get ya!"

5. On or about February 16, 2019, the defendant posted a message on Vk.com that referenced a visit from U.S. authorities. The post stated, among other things, in effect, "I did the opposite of retract my statement I promised them death!" (emojis omitted)

6. On or about February 23, 2019, the defendant posted a message on Vk.com, stating "These faggot Jews are burnt up when it comes to silencing me. Anyone

23

who tries I'll kill it's family WHILE extracting who sent them! Defend terrorists kikes and die maggots. Try me."

7.   On or about February 28, 2019, the defendant posted a picture of Agent Rochowiak's business card with the statement "These maggot jew lovers thought I was playing. Feel free to call them and tell them apparently I am not playing games here with bitch ass feds!!!"

8.   On or about April 5, 2019, the defendant posted a message on Vk.com, stating "Hello. My name is Bob and I'm an agnostic extremist. Extremely mean and obnoxious with the facts. I can't help it. I hate ignorance and stupidity. And I'm going to personally kill hasbara JIDF agents in my country and their terrorist kike families. 100% you best leave fast. But there's nowhere to hide from me. I'll go ANYWHERE." (emojis omitted)

9.   On or about April 7, 2019, the defendant posted a message on Vk.com stating that "lots of #Feds #FederalOfficers #StateDepartment #Aipac #JEWS will be killed when Americans see this Jewish trash plan. I'm ok with killing feds. As a matter of fact I am going to make this happen. They have met their ending here." (emojis omitted)

10.   On or about April 18, 2019, the defendant posted a message on Vk.com stating "I've got feds who owe flesh reparations. I'll get them one day."

**b.   Video Postings to "Robert Haas" Vk.com Accounts**

In addition to the written postings to his "Robert Haas" Vk.com account, the defendant also posted to this account videos of his interactions with law enforcement. The four videos the government seeks to admit are described below:

1.   On or about April 3, 2019, the defendant posted a video of him calling Agent Rochowiak's cellular phone and video of text messages he sent to Agent Rochowiak.

2.   On or about May 10, 2019, the defendant posted a video of his May 8, 2019 encounter with law enforcement.

6.   In or about May 12, 2019, the defendant posted a video of him calling TFO Kostuchowski's cellular telephone and leaving a voice mail message.

7.   On or about May 25, 2019, the defendant posted a video his May 8, 2019 encounter with law enforcement.

The government seeks the admission of the videos to prove identity – that the Robert Haas Vk.com account belonged to and was used by the defendant—and to prove that it was the defendant who left voicemails on the phones of Agent Rochowiak and TFO Kostuchowski. The videos are also directly probative of the defendant's intent. By posting the videos of his interaction with agents or his attempt to contact them, the defendant was announcing his intent to intimidate the agents by, in effect, telling his followers that he is willing to act aggressively towards agents. This, coupled with his online Vk.com postings that he will kill federal agents or encouraged others to do so, demonstrate that the defendant sent the messages to his followers that his threats were serious and that he was willing to go on the offensive against federal agents.

### c.    Postings to "Fox News" Vk. com Account

The defendant maintained an account on Vk.com with the screen name "Fox News." The government identified approximately 1000 postings on the Vk.com account "Fox News" between December 18, 2018, and June 11, 2019. The date of the last postings on the "Fox News" account, June 11, 2019, was the day of defendant's arrest in this case. The evidence establishing that the defendant made the postings to the "Fox News" account includes: (a) the account contains a picture with the name "Robert" next to it; (b) on December 29, 2018, following a person making a comment to a posting on the "Fox News" account and several exchanges with that person, the defendant replied from the "Robert Haas" account; (c) on December 31, 2018, the identical content of a text message sent to Special Agent Rochowiak's cell phone on December 30, 2018 appeared on the "Fox News" account; (d) on January 22, 2019, a picture of a dog was posted on the "Fox News" account with a caption referencing Chicago and the name "Robert Haas" at the bottom; (e) on January 29, 2019, another Vk.com account holder asked the "Fox New" administrator to add a message button and the defendant, using the "Robert Haas" account, responded on the "Fox News" account with the words "It's my page"; (f) many of the "Robert Haas" Vk.com postings described

in this filing appeared on the "Fox News" Vk.com account; and (g) the defendant posted on the "Fox News" account information about the Indiana charges against him.

The government is seeking the admission of the following 21 messages that the defendant posted to the Fox News Vk.com account. The first 6 messages are being offered to prove that the defendant controlled the account. The remaining 15 messages are direct evidence that the charged communications were true threats and that the defendant intended the charged communications to interfere with TFO Kostuchowski's duties as a law enforcement agent.

*Evidence that the Defendant Controlled the Fox News Account*

1. On or about December 29, 2018, in response to a third party post made to the Fox News account where the third party stated, "Fox news. No. Robert. I knew it was a joke account but I didn't know it was you." the defendant responded under the name "Robert Haas," "Mark, I'm kicking the jew fags and whores out of the group and its still growing. How does this make you feel?"

2. On or about December 30, 2019, the defendant, under the name "Robert Haas" posted a picture of Agent Rochowiak's business card on the Fox News Vk.com account.

3. On or about December 31, 2018, the defendant posted a message on Vk.com, with the message "Tell this faggot state department terrorist how you feel about his terrorist activities. Shoot him a text." Below the message was a screenshot of the following message sent to Agent Roschowiak's phone number, with the phone number visible, "Fucking bitch terrorist protecting maggot. Don't litter your trash "business card" at my house retard. You people are pathetic and stupid. I'm bringing humanity to get you. I'm considering handing out talmud verses and these israelis in WTC photos outside your office."

4. On or about January 17, 2019, the defendant posted two pictures on the Fox News account: one of a rock with the words "Bob was here" scratched into it, and one of the defendant lying on a bed.

5. On or about January 29, 2019, the defendant posted a message on Vk.com stating "Two counts of felony intimidation from Randolph county Indiana. Now watch the Jew keep lying saying I'm a baby rapist his Jew family and friends are. Lolol." The statement is followed by two pictures of the defendant. Per the government's position paper regarding the Indiana state

26

charges, (R. 117), the government will only seek the admission of this posting if the defendant contests ownership of the Fox News Vk.com.

6.  On or about February 22, 2019, the defendant posted, under the name "Robert Haas" several messages he sent to Agent Roschowiak's phone number.

*Evidence of True Threat and Intent*

7.  On or about December 29, 2018, the defendant posted a message on Vk.com stating that "Anyone who tries to stop the truth is guilty of treason and they must be killed…" On the same post, the defendant reposted from his Robert Haas Vk.com account, "I don't care if it's a cop, prosecutor, judge, politician or elite. You try to stop me from telling the truth I will cut every throat in your home. Try me!"

8.  On or about December 31, 2018, the defendant, on the Fox News account, reposted multiple messages from the Robert Haas Vk.com to include the following messages: "If they use the Patriot Act against you, YOU HAVE EVERY RIGHT IN THE WORLD TO KILL THE FEDS. 100%" and, a reposting from his Fox News account "If the patriot act is used against you righteously you can follow the prosecutor home and investigating officers home from work and kill them because it's illegal to monitor an American without a warrant. Saying patriot act you deserve your kids stabbed to death. Try me."

9.  On or about January 27, 2019, the defendant posted a message on Vk.com stating "The next time some federal pig tries to intimidate me I'm following it home and taking it's Jew lover family from it. (pictures of pigs) future Jew loving terrorist must go too. As a matter of fact killing feds who support Jews is righteous and they're guilty of treason. Saying there's some good Jews is treason and deserves a throat cutting. Don't say lying maggot shit and we won't hurt you!!! Bitch!"

10. On or about January 29, 2019, the defendant posted a message on Vk.com stating that "The next fed that plays billy bad ass I will slither up behind like a fucking snake and cut the spine through the adams apple. They all sleep somewhere. With future terrorists!!!" Accompanying the message is a picture of a hand holding a knife.

11. On or about January 29, 2019, the defendant posted a message on Vk.com stating that "Killing all CIA and State Department Jew protecting terrorists is necessary!!!"

12. On or about February 1, 2019, the defendant posted a message on Vk.com stating "Funny when bitch feds come around with 'opinions' about my attitude. I need anger management? I'll manage my anger on jew lover pigs

27

guilty of treason with a baseball bat and razor blade faggot. Time is up pigs.
I warned ya!"

13.    On or about February 11, 2019, the defendant posted a message on Vk.com
stating "ANYONE trying to take your freedom of speech; kill them, the
judge, prosecutor, complaining witnesses and their families!!"

14.    On or about February 12, 2019, the defendant posted a message on Vk.com
stating "These faggot #feds thought they could push me to stop telling the
facts. They didn't know I think they're a joke. Bitches. I push death son.
Not intimidation. I won't make threats I'll just come kill you who represent
Jews and try to obstruct my 1st amendment rights…Best choose your side
wisely! Take heed. When we round you up your it's your future terrorist
families who will also be a liability! WE WILL GET YOU!!!"

15.    On or about February 13, 2019, the defendant posted a message on Vk.com
stating "I would consider killing a federal officer the same as killing a jew.
They are terrorists and protect terrorists."

16.    On or about February 13, 2019, the defendant posted a message on Vk.com
stating "Pussy bitch #StateDepartment pigs have anything else to allow?
Some new recommendations about how I should conduct my internet
activities? Why don't you try to intimidate me some more for your kike Jew
bosses so I have a legit reason to kill you, your bosses and your future
terrorist liability children. Can't leave them retards running around. Think
I'm gonna watch my back? (laughing emojis) Jew loving trash!"

17.    On or about February 14, 2019, the defendant posted two messages on
Vk.com, under the name "Robert Haas" stating "Faggot better take heed
and never show their fed pig faces again without an appointment and I
charge 100$ an hour…I don't know who the fuck these pigs think they are
but I owe them bullets in their heads truly for their treasonous kike lover
shit. Terrorist state department."

18.    On or about February 14, 2019, the defendant posted a message on Vk.com
stating that "I have decided amongst myself the next fed who comes
pointing guns like jump out boys cause they wanna 'chat' I WILL
BUTCHER THEIR FAMILIES!"

19.    On or about February 14, 2019, the defendant posted a message on Vk.com
stating "The day I run up on a maggot fed there won't be no hands up it'll
be head popped open off it's shoulders before it blinks!"

20.    On or about February 16, 2019, the defendant posted a message on Vk.com
stating that "The next cop who tries to intimidate me for telling the truth
I'm going to stab it's entire family to death…FACT!"

21. On or about May 12, 2019, the defendant posted a picture of the agents who attempted to interview him on that day with the message, under the name "Robert Haas, "This #FBI officer demonstrated through behavior that he is in fact #guilty of #treason and must be #exterminated for his anti american treason. He said 'what do #Palestinians passports say on them' THEY SAY KILL HASBARA AGENTS."

Many of the proposed Vk.com postings proposed by the government relate directly to the defendant's interaction with the Department of State agents or with federal agents in general. The postings are consistent with the Subject Threats, provide context and meaning, and reveal the defendant's true intent behind the Subject Threats. The defendant has stated to law enforcement, as a defense that he did not issue true threats with the intent to intimidate, that he did not use the personal pronoun "I" when stating what he thought should be done to the agents. The Vk.com postings belie this claim and reveal the defendant's true intent regarding the Subject Threats (and all threats toward federal law enforcement) as the defendant often posted in the first person on Vk.com that he intended to kill agents. For example, on January 21, 2019, in addressing the State Department, the defendant posted on his Robert Haas Vk.com account, "They are equally as guilty of treason trying to intimidate me for telling the truth. I have every right to kill them…"

The defendant's admission to the FBI during his post-arrest interview as to the purpose of these online postings (because agents are terrorists), when coupled with his Vk.com postings, are direct evidence of his intent. For example, he encouraged people to kill law enforcement when he posted on January 31, 2019, on his Fox News Vk.com account,

If police or government officials come around trying to stop you from telling the truth it is your duty as a human being to follow them home and kill them. Don't comment or agree. Just do it if anyone bugs you for telling the truth about maggot Jews or their fairytale holocaust. KILL THEM! DO NOT ALLOW THEIR KIKE LOVER BULLSHIT EVER AGAIN! THIS WILL NO LONGER BE TOLERATED.

The same is true for the defendant's April 7, 2019, posting on his Robert Haas Vk.com account when he stated that "lots of #Feds #FederalOfficers #StateDepartment #Aipac #JEWS will

be killed when Americans see this Jewish trash plan. I'm ok with killing feds. As a matter of fact I am going to make this happen. They have met their ending here." Similarly, in a February 7, 2019, posting to his Robert Haas Vk.com account, the defendant expressed his desire to retaliate against federal agents if he thought they were following him. "If I thought feds were following me around I would have to hurt them for their un-american activities aka. TREASON."

The defendant also posted Agent Rochowiak's business card as well as videos of his May 8, 2019 encounter with agents on his Vk.com accounts. By calling the agents terrorists and stating that terrorists must die, by posting an agent's business card and videos of his encounters with agents online, the defendant encouraged people to kill agents and gave his followers a head start by identifying agents he believed should be killed. There can be no greater interference in an agent's duties than by killing the agent.

### C. Alternatively, the Additional Proposed Statements Are Admissible Under Fed. R. Evid. 404(b)

As stated above, it is the government's position that all of the proposed statements are direct evidence of the defendant's intent, establish the true threat nature of the Subject Threats, and provide needed context and background to the Subject Threats. In the alternative, the proposed statements are also admissible pursuant to Fed. R. Evidence Rule 404(b) to prove intent, and, as to six of the Vk.com Fox News posts, to prove identity.

Rule 404(b) provides a non-exhaustive list of purposes for which evidence of other crimes is admissible:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). The Seventh Circuit has repeatedly instructed that, under Rule 404(b), evidence of other bad acts is admissible so long as the evidence is not introduced to show the

defendant's bad character. *United States v. Taylor*, 522 F.3d 731, 734-36 (7th Cir. 2008) (among other examples, prior drug sales admissible to explain coded term); *United States v. Conner*, 583 F.3d 1011, 1021-22 (7th Cir. 2009) (prior drug sales admissible to show intent); *United States v. Edwards*, 581 F.3d 604, 609 (7th Cir. 2009) (prior drug sales admissible to show possession); *United States v. Canady*, 578 F.3d 665, 671-72 (7th Cir. 2009) (prior criminal uses of firearm admissible to show possession of the same firearm); *United States v. Cox*, 577 F.3d 833, 838-39 (7th Cir. 2009) (credit card fraud used to rent hotel rooms admissible to show defendant could pay for prostitution parties and to rebut defense that defendant was not wealthy); *United States v. Ellis*, 548 F.3d 539, 544 (7th Cir. 2008) (prior tax violations admissible to show wilfulness and to rebut forgetfulness defense). "But the law is clear that 'Rule 404(b) does not apply to direct evidence of the crime charged.'" *United States v. Bowling*, 952 F.3d 861, 869 (7th Cir. 2020) (*citing United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir. 2015)).

In explaining the scope of Rule 404(b), the Seventh Circuit has emphasized that Rule 404(b)'s purpose "is simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person . . . . No other use of prior crimes or other bad acts is forbidden by the rule, and the draftsmen did not try to list every possible other use." *Taylor*, 522 F.3d at 735-36. Thus, Rule 404(b) permits evidence of other acts to be introduced not only for the explicitly-listed purposes, but also for any other relevant purpose, such as "the need to avoid confusing the jury." *Id.* at 736. For example, in a drug case, "the fact that a defendant's buyers had dealt with him previously could explain how they were able to identify him, why they picked him for the controlled buy, and why he was willing to deal with them." *Id.* at 734. Those examples illustrate the breadth of the purposes for which the government may offer evidence under Rule 404(b).

Rule 404(b) prohibits the use of other-act evidence as "proof of a person's propensity to commit the charged offense, but allows such evidence for other purposes, including (but not

limited to) motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Lee*, 724 F.3d 968, 975 (7th Cir. 2013) (citing Fed. R. Evid. 404(b)). The Seventh Circuit, in *United States v. Gomez*, 763 G.3d 845 (7th Cir. 2014), abandoned the four-part test that had been the standard for evaluating the admissibility of other act evidence. District courts are now to apply a more straight forward rules-based approach. The court, in summarizing their finding, held that

> to overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great.

*Gomez* at 860; *See also United States v. Buncich*, 926 F.3d 361, 367 (7th Cir. 2019).

In assessing the relevance of other-act evidence, the Court looks to the "the non-propensity theory that makes the other-act evidence relevant, and specifically asks how the evidence tends to make a particular fact of consequence more or less probable." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). This other purpose "must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character." *Id.* at 860-61. "In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856. But that does not mean that other-act evidence must be excluded whenever a propensity inference may be drawn. *United States v. Norweathers*, 895 F.3d 485, 491 (7th Cir. 2018) ("Rule 404 does not require exclusion simply because a propensity inference *can*

be drawn. Rather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference.") (quoting *Gomez*, 763 F.3d at 856).

As explained above, the purposed of admitting the proposed statements is not to demonstrate propensity, but to prove intent. The proposed statements all relate, in one way or another, to the defendant's interaction with law enforcement that began with his posts to Ambassador Haley's Instagram account and continued, in a linear and related fashion, to the point of the charged Subject Threats. The proposed communications all provide context to, and support the element that, the Subject Threats were true threats and were designed by the defendant to intimidate and/or interfere with TFO Kostuchowski's duties as a law enforcement officer. The communications are admissible under a direct evidence analysis or a 404(b) analysis.

Although such evidence may be prejudicial to defendant, the government has appropriately limited the number of communications it intends to introduce to the violent, threatening or intimidating statements that stem from the defendant's interaction with Agents Noordeloos and Rochowiak, and TFO Kostuchowski, and have not included purely anti-Semitic postings, or unrelated threats made by the defendant. The question Rule 403 poses is whether the communications the government is proposing are *unfairly* prejudicial when compared to their probative value. These posts are defendant's own words. Defendant made the posts close in time to the Subject Threats, and thus, they show his state of mind on the topics in question. While the proffered evidence is unfavorable to defendant, it is not unfairly prejudicial. *See United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) ("most relevant evidence is, by its very nature, prejudicial . . . [but] evidence must be unfairly prejudicial to be excluded"). Moreover, it cannot be said this evidence poses any more prejudice than the alleged threat itself. *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (prejudice minimal in admission of other death threats because they "were no more inflammatory than the charged murder itself"). *See generally United*

*States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (rejecting Rule 403 challenge where other-act evidence "did not involve conduct more inflammatory than the charged crime"). Accordingly, the proffered evidence satisfies Rule 403. The Court can also provide the jury with limiting instructions if necessary as to the how and the extent to which the proposed statements can be considered.

## V.    Conclusion

For the foregoing reasons, the government moves to admit evidence as set forth above.

Dated: May 18, 2020                            Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:      */s/ Barry Jonas*
BARRY JONAS
ERIN KELLY
Assistant United States Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

GOVERNMENT'S MOTION *IN LIMINE* TO
ADMIT DEFENDANT'S STATEMENTS

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on May 18, 2020 to the following non-ECF filers:

Robert Anthony Haas
#52278424
Metropolitan Correctional Center
71 W Van Buren St
Chicago, IL 60621

*/s/ Barry Jonas*
BARRY JONAS
ERIN KELLY
Assistant United States Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604